Mr. Justice Clayton,
delivered the opinion of the court.
To the declaration in this cause, a demurrer was filed, setting forth ten causes. In our view, it will be unnecessary to consider more than one of these causes, and in the statement of the case we shall confine ourselves to a notice of such parts of the record, as will make this point intelligible.
D. and J. B. Walker, in May 1839, recovered a judgment in -the circuit court of Lauderdale county, against Horatio B. Warburton, for the sum of $1150. In 1842 they were declared bankrupts, in the state of Alabama, and all their effects were transferred to Ptolemy Harris, the assignee in bankruptcy. Harris assigned this judgment to James W. Long, who assigned it to the plaintiff in error, Wilson.
The defendants, under other, judgments against Warburton, caused two negro men to be sold, purchased them at execution sale, and took them to the county of Choctaw. These executions are alleged in the declaration to be fraudulent. The plaintiff caused an execution to be issued on the judgment, in favor of Walker, and placed in the hands of the sheriff of Choctaw county, to be levied on the two negroes above-mentioned ; but the defendant, it is alleged, forcibly and fraudulently prevented the sheriff from making the levy, and the plaintiff thereby from making his money. This suit is brought to recover damages from the defendants for their conduct.
The first cause of demurrer, questions the right of the plaintiff to maintain this action in his own name. A legal right in the plaintiff to the matter in dispute, is the necessary foundation of every action at law. The judgment was in the name of the Messrs. Walker, and the legal right to enforce it, prior to their bankruptcy, resided in them alone. At common law, no chose in action could be assigned, so as to give to the assignee a right to sue in his own name. We have a statute which authorizes the assignees of certain instruments to maintain suits in their own names, but judgments are not comprehended in *250 the statute. In the construction of similar statutes in other states, it has been repeatedly holden, that the assignee of any instrument, not embraced in the statute, stood as at common law, and could not maintain any action upon it in his own name. Craig v. Craig, 1 Call, 483. Lewis v. Harwood, 6 Cr. 82. This construction is clearly correct.
The act of congress, usually styled the bankrupt act, in its third section, provides that all the bankrupt’s property of every kind, shall pass to the assignee and be vested in him, and that all suits in law or in equity then pending, in which the bankrupt is a party, may be prosecuted or defended by such assignee to their final conclusion. Whether this is to be done by the assignee in his own name, or that of the bankrupt, is not stated. But whether it maybe dpne in the one name or the other, it certainly gives to the assignee no power to transfer to another person a right to any chose in action, which such third person can prosecute in his own name. Such transfer by the assignee must be governed by the same rules which regulate transfers by other persons. The right then, in this case, which passed by the assignment, could only be enforced in the name of the bankrupt, or at farthest, in the name of his assignee, for the use of the person really interested. It is manifest that if a scire facias, from any cause, had become necessary in the case, it must have been in the name of the Walkers, or if the act of congress changes that, in the name of their assignee in bankruptcy. The execution must have been in the same name. If the levy of such execution were obstructed, the right to recover damages for such obstruction, if it existed in any one, must have resided in them, or in their, assignee in bankruptcy alone.
The plaintiff in this instance, having failed to show a legal right in himself, has shown that the action cannot be sustained in his name.
Without intending to express any binding opinion on the subject, we will venture to suggest for the consideration of counsel, whether any cause of action is disclosed by the declaration against the present defendants.
For the reason above pointed out, the judgment of the court below will be affirmed.
*251 The plaintiff in error filed the following petition for a rehearing :

To the Honorable the High Court of Errors and Appeals.

In the case of H. R. Wilson v. Ransom McElroy, from Lau-derdale, in which there has been an opinion delivered and judgment of affirmance rendered, the counsel for the plaintiff in error respectfully requests a reconsideration of the cause.
The case came up for revision on the judgment below sustaining a demurrer to the declaration; and the judgment has been affirmed upon the opinion of this court, that the declaration was invalid as not showing a legal right in Wilson, the plaintiff below.
The cáse disclosed in the declaration is in substance, that on May 22, 1839, D. Walker and J. B. Walker, obtained judgment in Lauderdale circuit court, against H. B. Warburton, for $1150 damages, beside costs; which remaining wholly unpaid, was, on August 19th, 1842, included by D. & J. B. Walker, in their assignment in bankruptcy to P. T. Harris, the assignee, pursuant to the act of congress; that Harris', pursuant to the authority in him as assignee, assigned the judgment to J. W. Long, on the 20th of April, 1843, who, on that day, made assignment thereof to the plaintiff, “by virtue whereof the plaintiff became vested with all the legal and equitable advantages and benefits to be derived from said judgment;” that Warburton having sufficient estate to satisfy the judgment, to wit, two slaves, the defendants, McElroy, Edwards, and Barrow, on the 18th and 30th December, 1842, without any lawful authority, but fraudulently combining, &c., caused executions on other judgments against Warburton to be issued, they well knowing the said other judgments to have been fully satisfied and discharged, caused them to be levied on said two slaves and sold, and they became the purchasers, on an agreement between them to share the product of the fraud: that the plaintiff on June 19, 1843, caused execution on the assigned judgment to be issued and delivered to the sheriff of Choctaw county, with instructions to levy it on the said two slaves, which the defendants kept secreted in that county, but they would not permit *252 the sheriff to levy, but with force and violence resisted, and thereby prevented the collection of the amount of said judgment, all of which were to the plaintiff’s damage on the special case.
The first question considered by the court, is, whether the plaintiff presented himself with such legal interest in the judgment, whose execution was obstructed, as entitled him to sue at law? It is assumed that whoever sues at law must have the legal right. The right of the Messrs. Walkers, as judgment creditors, so far as enforceable at law, was a legal right; but they, under certain circumstances, might have made the judgment the subject of equitable interposition. Under the act of bankruptcy, the judgment, as an adjudicated legal right, with all the equities that had or might attach to it, was passed to Harris, the assignee in bankruptcy. It will surely occur that all the right of the judgment creditors was passed to their as-signee, and nothing thereupon remained in them. Harris then was invested of all the right in all its ramifications. It is submitted that under the bankruptcy act, the assignee was allowed and required to make sale of the effects, choses in action, &c. surrendered, and to bring the products of the sales into a fund for distribution among the creditors of the bankrupts. The declaration avers, that pursuant to that act, Harris made assignment of the judgment to Long. Now, if the act allowed the assignee to make such sale, an assignment was the necessary consequence ; and it surely cannot be controverted that all the rights in and attached to the judgment were passed to Long, so as to all practical purposes, to put him in the room and stead of the bankrupts. No doubt then could be entertained as to the efficacy and scope of Long’s assignment of the judgment to the plaintiff Wilson. In this manner, Wilson became entitled to the exclusive control of the judgment and of the execution thereon. All the rights of the bankrupts, the judgment plaintiffs, had thus become passed to Wilson. No figment or fragment remained unpassed. What then was the nature of Wilson’s right? Had he not the power to order execution to issue, to direct its levy, to indemnify the officer, to bid at the *253 sale, to receipt for the product ! If he had, was this a legal, or an equitable right ! If enforceable according to the course of the common law, was it not a legal right! Wilson was not seeking to recover by action at law, a debt due from Warbur-.ton ; nor was he seeking to recover unliquidated damages from him. The statutes concerning the assignment or indorsement of negotiable or unnegotiable paper were not concerned.- All the right, whether legal or equitable, in the judgment had been passed to him. By the third section of the bankrupt law, the assignee in bankruptcy was fully clothed with the power of sale; and he, exerting that right, had passed all the rights in and to the judgment of the bankrupt; and it is a clear proposition that any claim properly founded on the judgment, and cognizable at law, was a legal right, and any claim justly arising from the judgment, and properly prosecuted in chancery, was an equitable right.
Thus then the character of the right involved, is not determinable upon the assignments merely, for they passed the whole right of every description. We are thence led to examine the wrong alleged. The first phase of that wrong is the nefarious combination to foist up satisfied judgments ; to do this without authority, and to cause fraudulent executions on them to be levied on slaves bound by the transferred judgment, and purchasing them at the sale, so as to obtain, on an abuse of the course of justice, possession of the slaves; and then the concealment of the slaves and the resistance of the officers, whereby Wilson was prevented satisfaction of the execution of his judgment. The gist of this is, a fraudulent conspiracy to prevent satisfaction of a judgment, of general lien on property, by practices susceptible of proof, and which resulted in preventing satisfaction. The force against the officer was of consequential injury to the plaintiff. The only question, surely, is whether an injury was inflicted! If an injury was committed, it is plain it affected the plaintiff only. Under the constitution, there is to be no injury without a remedy. What was the remedy, and in what forum! The action was to recover damages, in an action on the special case, for the conspiracy, whose acts resulted in the injury. The *254 damages sought were unliquidated; and consequently, as the ascertainment of them was addressed to a jury, equity could not interpose. The remedy then was open and clear at law. Before a jury, on proof of all the facts alleged, without any meritorious defence, the jury and court would have had full ground on which to have assessed the damages. The declaration does not seek to reverse any trial of the right to any specific property.
J. G. Ott,
Steele,
A. Hutchinson. ■
The court, however, adhered to its opinion, and overruled the application. -